Good morning, Your Honors. May it please the Court, my name is Deanna Kuang, appearing for the appellant, Mr. Jose Luis Tapia-Fierro. I would like to reserve two minutes for rebuttal, and I would like to begin today by addressing the Court's question. The doctrine of prudential exhaustion does not apply to the case here for several reasons. First, with respect to Mr. Tapia-Fierro's motion to reopen, it does not matter what claims he made or could have made in that motion, for the Immigration Court would have denied that motion for lack of jurisdiction, and the BIA would have affirmed summarily on the same basis. Second, as this Court recognized in El Riscate Legal Services, when the agency's mind appears set and recourse to administrative review, the answer to that seems apparent already, then such recourse is futile and is not required. And that is clearly and obviously the case here from the record, which is presumably why the government did not argue prudential exhaustion either before the District Court or in its brief on this appeal. Thus, the first reason that the doctrine does not apply here is futility. Second, this Court has established three requirements that must be met before the doctrine may apply, and none of those requirements exist here. As to the first factor, there already is a proper record for the District Court to make a proper determination on Mr. Tapia-Fierro's due process claim. All that is really required to make that determination is the transcript of the removal hearing. With respect to the second factor, that, too, does not apply here because this is not a case where the petitioner was gaming the system or deliberately attempting to bypass the administrative scheme. Rather, Mr. Tapia-Fierro did attempt to seek administrative review. Lastly, with respect to the third factor required for prudential exhaustion, that, too, does not apply here because all that he is asking for right now at the end of the day is a chance for administrative review to present his claim on the merits. As in Noriega, Lopez v. Ashcroft, and in Castillo v. Lago of the INS, there is therefore no basis here for applying the doctrine of prudential exhaustion. With respect to the criminal prosecution under 1326D, there are no cases holding that waiver of a voluntary defense in the criminal context dictates the application of prudential exhaustion in the civil context. That would not advance the purposes of the doctrine of prudential exhaustion, which is to preserve the administrative system of review and ensure that agency expertise is applied where necessary. Thus, for those reasons, Your Honors, the doctrine does not apply in this case. Rather, this appeal presents a single jurisdictional question for the court to decide, and that is, did the district court err in dismissing Mr. Tapia-Fierro's habeas claim for lack of jurisdiction pursuant to the REAL-ID Act, where that habeas claim simply asks the district court to review the deprivation of its right to appeal? As outlined in the briefs, the answer to that question is yes. The district court did err in dismissing Mr. Tapia-Fierro's due process claim under the REAL-ID Act. The REAL-ID Act's jurisdiction stripping provisions are extremely narrow. They apply to one set of challenges and one set of challenges only, and that are direct challenges to orders of removal. The statute defines orders of removal as orders concluding that a person is deportable. Therefore, a direct challenge to an order of removal is a direct challenge to the grounds upon which that conclusion of deportability was reached. But that is not what Mr. Tapia-Fierro is asking the district court to consider in his habeas claim. He is not asking the district court to decide whether his involuntary manslaughter conviction was an appropriate grounds for ordering him removed. All he is asking the district court to decide is whether he knowingly and boundly waived his right to appeal. And under the plain statutory definition of order of removal, his claim is not a direct challenge to the order of removal, and therefore is not a claim that is precluded by the jurisdiction stripping provisions of the REAL-ID Act. Singh v. Gonzalez is controlling on this question of jurisdiction. In that case, the court emphasized that when the petitioner's claimed injury is a deprivation of the right to appeal, and when the desired relief is simply a day in court or a day before the BIA on the merits, then that should not be precluded by the REAL-ID Act. The pivotal language in Singh, Your Honors, is at 499F3D at 979, where the court stated, the claimed injury that Singh suffered as a result was the deprivation of an opportunity for a direct review of the order of removal in the court of appeals. A successful habeas petition in this case will lead to nothing more than a day in court for Singh, which is consistent with the congressional intent underlying the REAL-ID Act. Just restart the 30-day clock, right? Yes, Your Honor. That's all Mr. Tapiaferro is asking the district court to do. Is that a quote from Singh? Yes, Your Honor. Yes, Your Honor. The pivotal language in Singh is at 499F3D at 979, where the court emphasized the fact that the petitioner's desired relief was simply, as Judge Hawkins pointed out, to ask the BIA to restart the clock in which he can appeal on the merits. I'd like to highlight for Your Honors that Singh v. Gonzalez is not the first time that a court has found a challenge to be not a direct challenge to a removal order under the REAL-ID Act. For example, in Moggy v. United States, an 11th Circuit case that the court cited in Singh, in that case, the 11th Circuit held that a petitioner who contests the very existence of an order of removal is not challenging the order of removal itself. We're bound by Singh, right? Yes, Your Honor. I believe we are. Similarly, in Kumar Rasami v. AG of the United States, another case cited by Singh, the 3rd Circuit held that a petitioner who is challenging the legality of his order of removal Even if the 11th and 3rd Circuit had ruled the other way, we're bound by Singh. That's a nice way of saying, why are you reciting out-of-circuit cases to us? Yes, Your Honor. I just would like to make clear, just in case. That we would not be crazy if we applied Singh. No, Your Honor. Our position is that it would not be crazy. In fact, it's required. If the Court has any further questions, I'd like to save the remainder of my time for a little while. Let me ask you this. What firm are you with? I'm with Covington & Burling, Your Honor. You take this pro bono? Yes, Your Honor. Good for you. Thank you. Unless the Court has any further questions, I'd like to preserve the remainder of my time. Maybe you ought to apply for a position with the Justice Department. They're probably looking for folks like you. Don't take his job. Yes, Your Honor. Thank you. Good morning, Your Honors. Christopher Dempsey for Appellee. The appellant wants a second bite at the apple. Over seven years and since his removal order. Let me start out with it. I hear that so often. And you know, it makes me hungry. I haven't had any breakfast. I'd like a second bite. The point is, Your Honors, we don't even get to the merit of the appellant's claim of unknowing waiver of appeal because his habeas petition is barred under real ID and under the doctrine of prudential exhaustion. His waiver of appeal claim is barred because it's a challenge to the validity of the result, or on the alternative, it arises from actions taken in proceedings to remove him. Under Section 1252A5, petition for review is the sole and exclusive means for judicial review of removal orders. And under Section 1252. Are you just re-arguing Singh or are you talking about this case? I'm talking about this case, Your Honor. As far as Singh. It seems to me that given Singh that those arguments don't, aren't terribly convincing. Well, Your Honor, it's important to note that the appellant's citation at 979 of Singh refers to Singh's second claim of ineffective assistance of counsel that occurred after the issuance of the final order of removal in that case. The due process claim, due process violation in this case is more like Singh's first claim of ineffective assistance of counsel, which this Court held was barred by the doctrine of prudential exhaustion because it arose both before and during his removal proceedings. The same is true here. Appellant claims that his waiver of appeal was unknowing. That is a matter that arose during his removal proceedings, and in order to raise that, he needs to go through the administrative scheme in place and raise that via review. So appellant and I can agree on one thing, and that's that Singh controls, just that it controls to bar plaintiff's claim or appellant's claim under the doctrine of prudential exhaustion if you look at the way this Court held his first claim of ineffective assistance of counsel. So as far as prudential exhaustion goes, this Court should apply the doctrine to bar appellant's claim. He didn't claim unknowing waiver of appeal in his motion to reopen. Kennedy. Let me ask you this. The first time around, maybe that's a bad phrase, but he was at a group hearing. Correct. And a group of these folks were there, and they were advised en masse, right? Correct. He had no lawyer. He didn't. The judge asked him if he wanted one, if he wanted to postpone the proceedings so that he could obtain counsel. Appellant stated that he didn't want to. It's important to note that appellant was twice advised of his right to appeal the judge's order. He was advised not just in the group setting, but during his individual removal proceeding, too. But did he speak English? He did. What? The record notes, yes, that he did, Your Honor, speak English and understood English. There's no confusion on the record. And I think if you look at the second of the three individuals that were in the removal proceedings that day, Omar, apparently there was some confusion about what the judge was telling him and whether or not he had a right to appeal, whether or not the order would be final. And the judge addressed that. But there's no question if you look at Tapia or the last gentleman to go that day, Aguilera, as to whether or not they had a right to appeal, both affirmatively waived their right. When they were all together at this group hearing, they were before an I.J.? Correct, Your Honor. Huh? Yes, Your Honor. And where were they at that time physically? They were in the courtroom, immigration judge's courtroom, Your Honor. Where? In San Diego? Well, that's all right. Don't worry about it. But the judge first advises everybody in the group, you have a right to appeal the decision I make in your case at the end of the case. An appeal means you disagree with my decision and you want to hire a court to review it to see if it's correct. Then during the individual proceedings, the immigration judge starts off by saying to Tapia, Helen, do you understand the rights I've explained to you? And then they go through and determine whether or not he's removable. The judge enters his order and then again says on Excerpts of Record 24, sir, you have the right to appeal my decision. Do you wish to appeal my decision? No, I want to return to Mexico. It's only many years later, after he is apprehended and convicted for illegal entry after deportation, through his habeas petition, that an appellant tries to raise this issue of unknowing waiver of appeal. And this court has held And he was initially represented by whom? He was pro se, Your Honor. Pro se. I mean, he claims that he contacted some pre-legal services in his habeas petition, but during the proceedings themselves, he states that he represents himself. And it's clear from his submissions in the motion to reopen to the immigration judge, to the board, and ultimately petitioned for review before this court that he had represented himself. Up until the denial of his habeas petition, he represented himself. But again, the doctrine of prudential exhaustion, not just Real ID, but the doctrine of prudential exhaustion bars appellant's claim. Number one, because agency consideration is necessary to generate a proper record. It's your position it should bar. Real ID. No, it's your position that the doctrine of prudential exhaustion, which is a judge-made rule and we have the discretion to apply, should be applied here. You're right, Your Honor. It's a judge-made rule, although this Court has routinely held that when it comes to habeas petitions, this Court requires a petitioner to exhaust his administrative remedies as a matter of course. The key consideration, as this Court said in Lang, is whether relaxation of the doctrine of prudential exhaustion would encourage deliberate bypass of the administrative scheme. In this case, permitting appellant to present his unknowing labor claim for the first time before the district court would allow him to bypass the administrative scheme that's in place to deal with such claims. If appellant was permitted to hopscotch over the judicial review requirements, it would encourage deliberate bypass and permit aliens to ignore the deadlines and pathways. These rules, look at them all together, are second in complexity to the Internal Revenue Code. And we expect these folks to understand all of that. You know, it's a little crazy, isn't it? You're right, they are complex. But the fact that you have a right to appeal and that there's a process and forms, the agency tries to make... I have to tell you this story. I'm getting old, you know, and my thoughts go on some recording here. But I remember the first time I went to San Diego to help out in somebody's drug cases. That was in, oh, the winter of, well, yeah, it was in January of 68. And at that time, Jacob Weinberger, brother of Caspar Weinberger. You know who Caspar Weinberger was? No, Your Honor. Okay, well, he was Secretary of Defense and all that. He was one of President Reagan's closest friends. And so Jacob was there. He was signed one of the drafters of the Constitution of Arizona. And so he was probably, I don't know, he seemed very old to me at the time. He was probably mid-80s, early 90s. And so he wanted to show me around. And he took me into his chambers. And we walked in there. And here were about 20 illegal aliens. None of them spoke English. And it was a small chamber because he was a senior judge. This was some of the stuff he was doing as well as administering oaths of citizenship to people. They walked in. He held my hand. I'll never forget this. And he looked around the room. He said, see these people? I said, yeah. He said, this is my family. And I'm sure if Jacob would advise these folks, he would advise them in words and terms that they would have understood. And they'd know what the consequences were. Of course, in those days, the laws were not that complex. But I think about that when I think about people being advised of their rights en masse, you know. And the courthouse, one of the courthouses in San Diego was named after Jacob Weinberger. So it's just a thought to carry back. I understand that, Your Honor. Just to be clear, this wasn't just a group advisement. It was both group and independent. I know, I know. But he had no lawyer. Or he went to some notorio who probably fleeced him. You know how the system works? You can be a disbarred lawyer and practice in the immigration court. Did you know that? I didn't. That's a shame. That's a shame, Your Honor. That's the way our system is today, the way we treat people. And I think it's a black mark on our history. So that's all I'm going to say. The fact of the matter is, Your Honor, is Appellant did have a process. And he did raise certain issues in his motion to reopen to the immigration judge and the board. And even this Court, he just chose not to raise the issue that he's trying to raise today. Therefore, it's barred under Real ID and under the Doctrine of Prudential Exhaustion. Thank you. Very briefly, Your Honors. With respect to your question, Mr. Tapiaferro was at the El Centro immigration court during his removal proceedings. With respect to the issue of the Doctrine of Prudential Exhaustion, the government has not raised any issues that would compel application of that doctrine. As explained earlier, futility is clear from the record. It does not matter whether or not Mr. Tapiaferro did make his due process claim. We submit that he did. But even if he didn't, it doesn't matter because the record shows it would have been futile, as the immigration court would have dismissed the motion for lack of jurisdiction anyways. With respect to the government's point about the first ineffective assistance of counsel claim in the Singh, that does not apply here because, as the decision makes clear, it looks as if the court applied statutory exhaustion in the Singh case to preclude his first ineffective assistance of counsel claim, and that doesn't apply here. And finally, with respect to the government's comment about the Petitioner hopscotching over the administrative review process, as the record reflects, that is not true. Mr. Tapiaferro attempted to seek administrative review, which was denied, as we now know, was on an improper basis. And for that reason, the doctrine should not apply. Singh is controlling. And we respectfully request that the Court reverse the denial of his hideous claim. Thank you. Thank you, Your Honors. The matter is submitted. And we come to the next one, James McCoy v. Chase Manhattan Bank.
judges: Pregerson, Hawkins, Cudahy